UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEUROLOGICAL SURGERY PRACTICE OF LONG ISLAND, PLLC,<br><br>Plaintiff,<br><br>vs<br><br>CIGNA HEALTH AND LIFE INSURANCE COMPANY and CONNECTICUT GENERAL LIFE INSURANCE COMPANY,<br><br>Defendants. | Case No.<br><br>Hon.<br><br>**COMPLAINT** |

Plaintiff, Neurological Surgery Practice of Long Island, PLLC, by its attorneys, Harris Beach PLLC, for its Complaint against the Defendants, Cigna Health and Life Insurance Company and Connecticut General Life Insurance Company (collectively "Cigna"), alleges as follows:

## PRELIMINARY STATEMENT

1. Defendants have violated federal law by failing to timely pay hundreds of thousands of dollars in out-of-network payment awards issued to the Practice – a neurological surgery provider –under the No Surprises Act.

2. Having underpaid each of the medical services claims at issue in this proceeding, Defendants forced the Practice to file Independent Dispute Resolution ("IDR") proceedings under

the No Surprises Act to be fairly compensated for the critical medical services provided. After losing those proceedings, Defendants had 30 days under federal law to pay the additional amounts owed. Defendants failed to do so, and now forces the Practice to file this lawsuit to enforce the awards and obtain the payment it is owed for the life-saving medical services that the Practice provided to beneficiaries of Defendants' health plans. The IDR process was intended to provide a quick mechanism for providers to get fairly paid. Yet Defendants are ignoring federal law and continuing its pattern of denying, delaying, and underpaying all the way to the courthouse door.

## PARTIES, JURISDICTION, AND VENUE

3. Plaintiff, Neurological Surgery Practice of Long Island, PLLC, is a New York professional service limited liability corporation with its principal place of business located at 100 Merrick Road, Suite 128W, Rockville Centre, New York.

4. Neurological Surgery Practice of Long Island, PLLC was formed in August 2020, and, because of a merger in December 2020, is the corporate successor of Neurological Surgery, P.C.

5. Upon information and belief, Defendant Cigna is a Connecticut for-profit health insurer with a principal place of business located at 900 Cottage Grove Road, Bloomfield, CT 06002.

6. This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331.

7. Venue is proper in this District because the Plaintiff maintains its principal place of business in the District.

## FACTS COMMON TO ALL CAUSES OF ACTION

### NSPC

8. Plaintiff, Neurological Surgery Practice of Long Island, PLLC (the "Practice"), is one of the largest private neurosurgery practices on Long Island and in the New York metropolitan area.

9. The Practice's award-winning specialists are among the best neurosurgeons in New York City and on Long Island and serve as chiefs of neurosurgery in some of the most prestigious hospitals on Long Island.

10. Historically, the Practice, like many other independent medical specialty groups, has chosen in most cases not to join health plan networks, because its relatively small size makes it impossible to negotiate acceptable rates. Accordingly, neither the Practice nor its neurosurgeons are health plan participating providers in most cases. Notwithstanding this, the Practice regularly provides medically necessary, covered services on an "out of network" and often emergency basis to beneficiaries of all health plans.

11. Neither the Practice nor its neurosurgeons are participating providers with health plans issued, sponsored, or administered by Defendants. However, the Practice regularly provides medically necessary, covered services to the enrollees and beneficiaries of Defendants' plans. The

Practice's provision of these services since January 1, 2022, in many cases has been governed by the provisions of the No Surprises Act, Public Law No. 116-260.

**The No Surprises Act**

12. In December 2020, the United States Congress enacted the No Surprises Act, which was signed into law as part of the Consolidated Appropriations Act of 2021 (Public Law 116-260; Division BB § 109) on December 27, 2020. It took effect on January 1, 2022.

13. No Surprises Act § 103 amends 42 U.S.C. §§ 300gg et seq. to establish an IDR process for non-emergency services performed by non-participating physicians at in-network hospitals, hospital outpatient departments, critical access hospitals, and ambulatory surgical centers and out-of-network emergency services in the emergency department of a hospital or independent freestanding emergency department.

14. The No Surprises Act provides that the federal IDR process will apply and may be used by physicians and health plans to determine the out-of-network rate for emergency services in the emergency department of a hospital or independent freestanding emergency department and non-emergency items and services furnished by non-participating providers during a visit to a participating health care facility when a "specified state law" does not apply (42 U.S.C. § 300gg-111).

15. Since the No Surprises Act became effective on January 1, 2022, the Practice's reimbursement for many of these services has been governed by the provisions of the Act.

**FIRST CAUSE OF ACTION**

16. The No Surprises Act prohibits out-of-network providers, such as the Practice, from balance billing or otherwise pursuing payments from health plan members. *See* 42 U.S.C. §§ 300gg-131(a) (emergency services), 300gg-132 (non-emergency services performed by nonparticipating providers at participating facilities).

17. In accordance with the No Surprises Act, when the Practice has disagreed with the initial reimbursement made by the Plan for medically necessary, covered services, the Practice has pursued its right to have this disagreement adjudicated by the Act's independent dispute resolution process, established by 42 U.S.C. § 300gg-111(c)(2).

18. The Practice has at all times complied with and participated in this IDR process in good faith, timely providing the offer and submissions required by 42 U.S.C. § 300gg-111(c)(5)(B).

19. This section provides, in relevant part:

> Submission of offers. Not later than 10 days after the date of selection of the certified IDR entity with respect to a determination for a qualified IDR item or service, the provider or facility and the group health plan or health insurance issuer offering group or individual health insurance coverage party to such determination—(i) shall each submit to the certified IDR entity with respect to such determination—(I) an offer for a payment amount for such item or service furnished by such provider or facility; and (II) such information as requested by the certified IDR entity relating to such offer; and (ii) may each submit to the certified IDR entity with respect to such determination any information relating to such offer submitted by either party, including information relating to any circumstance described in subparagraph (C)(ii).

20. In some cases, the IDR entity, after reviewing the parties' offers and submissions, has selected the Practice's reimbursement offer in accordance with 42 U.S.C. § 300gg-111(c)(5)(A).

21. This section provides, in relevant part:

> In general. Not later than 30 days after the date of selection of the certified IDR entity with respect to a determination for a qualified IDR item or service, the certified IDR entity shall—(i) taking into account the considerations specified in subparagraph (C), select one of the offers submitted under subparagraph (B) to be the amount of payment for such item or service determined under this subsection for purposes of subsection (a)(1) or (b)(1), as applicable; and(ii) notify the provider or facility and the group health plan or health insurance issuer offering group or individual health insurance coverage party to such determination of the offer selected under clause (i).

22. Under the No Surprises Act, when the IDR entity has selected the Practice's offer, the Plan has 30 days from the date on which the determination is made to pay the additional reimbursement due the Practice.

23. Specifically, 42 U.S.C. § 300gg-111(c)(6) provides:

> The total plan or coverage payment required pursuant to subsection (a)(1) or (b)(1), with respect to a qualified IDR item or service for which a determination is made under paragraph (5)(A) or with respect to an item or service for which a payment amount is determined under open negotiations under paragraph (1), shall be made directly to the nonparticipating provider or facility not later than 30 days after the date on which such determination is made.

24. Attached to this Complaint as Exhibit A, and incorporated herein by reference, is a spreadsheet listing claims involving medical services provided by the Practice to enrollees or

beneficiaries of Defendants' plans for which (a) an IDR proceeding was commenced; (b) the duly appointed IDR entity, after reviewing the parties' offers and submissions, selected the Practice's offer, resulting in an additional reimbursement due from the Defendants' plans to the Practice; (c) more than 30 days have elapsed since the IDR entity made these determinations; yet (d) the Plan has breached its statutory obligation under 42 U.S.C. § 300gg-111(c)(6) to pay these additional reimbursement amounts.

25. Additionally, Defendants' plans have persisted in failing to pay these additional, statutorily ordered reimbursement amounts notwithstanding numerous attempts by the Practice to have these plans honor their obligation.

26. The plans have no legitimate defense to their persistent refusal to pay these statutorily compelled additional reimbursement amounts.

27. Indeed, the No Surprises Act specifically provides that a "determination of a certified IDR entity under subparagraph (A)—(I) shall be binding upon the parties involved, in the absence of a fraudulent claim or evidence of misrepresentation of facts presented to the IDR entity involved regarding such claim; and (II) shall not be subject to judicial review, except in a case described in any of paragraphs (1) through (4) of section 10(a) of title 9, United States Code" 42 U.S.C. § 300gg-111(c)(5)(E)(i).

28. In the time that has elapsed since these IDR determinations were made, Defendants' plans have failed to come forward with any objection regarding fraud, misconduct, partiality or corruption, or any IDR entity exceeding its powers.

29. The persistent refusal by Defendants' plans to honor their statutory obligations under the No Surprises Act has caused the Practice substantial and grievous injury.

30. Since the No Surprises Act became effective, Defendants' plans have unilaterally and dramatically reduced their initial out-of-network reimbursement rates to the Practice, drastically impairing the Practice's financial status and viability.

31. Accordingly, the failure of Defendants' plans to pay significant amount of additional reimbursement adjudicated to be due the Practice is a significant and urgent issue.

32. By reason of all the foregoing, the Practice is entitled to have the IDR determinations confirmed, converted into a federal judgment, and the assistance of this Court in post-judgment collection efforts.

33. The Practice is further entitled to pre-judgment interest from the 31st day after each award was entered until the date judgment is entered and post-judgment interest thereafter until the judgment is satisfied.

## SECOND CAUSE OF ACTION

34. Plaintiff repeats and re-alleges the allegations set forth above as if more fully set forth herein.

35. The Practice has been assigned the right to payment and benefits from the beneficiaries of Defendants' plans. Accordingly, the Practice steps into the shoes of, and are now

considered, ERISA beneficiaries pursuant to 29 U.S.C. § 1002(8) for the self-funded plans that Defendants are administering.

36. As an assigned beneficiary, the Practice is entitled to plan benefits and has standing to bring claims under ERISA. Defendants are responsible for No Surprises Act compliance for the plans they administer. The Practice is entitled to recover payment of benefits of the plans from Defendants per the IDR determinations.

37. Defendants improperly denied benefits by failing to pay the IDR awards within thirty (30) days of each decision as required by federal law. Defendants' actions were in derogation of the Practice's rights pursuant to law.

38. Defendants' actions also constituted an abuse of discretion by: (a) not properly interpreting plan terms that are not ambiguous; (b) exercising discretion over non-discretionary plan terms; and (c) denying Plaintiffs payment and benefits under the plan terms.

39. Defendants' denial of payment and benefits upon the finality of IDR determinations were not substantially justified decisions, were arbitrary and capricious, were unsupported by substantial evidence, constituted abuse of any discretion allowed, and were wrongful under all the circumstances.

40. By reason of all the foregoing, the Practice, as assignee, hereby asserts a claim under ERISA Section 502(a)(1)(B), 29 U.S.C. § 1332(a)(1)(B) to recover payment of the IDR awards from the self-funded plans administered by Defendants at issue herein.

41. Pursuant to 29 U.S.C. § 1132(g), the Practice furthers seek an award of reasonable attorney's fees and costs incurred in bringing this action.

WHEREFORE, the Plaintiff, Neurological Surgery Practice of Long Island, PLLC, demands that this Court enter judgment against the Defendants, Cigna Health and Life Insurance Company and Connecticut General Life Insurance Company, as follows: (a) enforce the IDR determinations and issue judgment for the total amount outstanding plus pre- and post- judgment interest per 28 U.S.C. § 1961; (b) award Plaintiff its costs of suit herein and reasonable attorney's fees pursuant to ERISA Section 502(g)(1), 29 U.S.C. § 1132(g); and (c) award Plaintiff its attorney's fees, costs, pre- and post-judgment interest, and any and all additional legal or equitable relief to which Plaintiff may be entitled and this Court deems just and proper.

Dated: Uniondale, New York
April 21, 2023

HARRIS BEACH PLLC

By: s/ *Roy W. Breitenbach*
Roy W. Breitenbach
The Omni
333 Earle Ovington Blvd, Suite 901
Uniondale, New York 11553
Phone: 516.880.8484
Fax: 516.880.8483

*Attorneys for Plaintiff Neurological Surgery Practice of Long Island, PLLC*

CounselOfRecord